**LITTLER MENDELSON, P.C.**
Ivan R. Novich, Esq. (N.J. Bar No. 038311996)
Rachel Simone Frey, Esq. (N.J. Bar No. 217592017)
One Newark Center, 8th Floor
Newark, New Jersey 07102
973.848.4700
Attorneys for Defendant
*Wayfair LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARRYL GAINES, | Civil Action No. 1:21-cv-15843-EAP-KMW |
| Plaintiff, | |
| vs. | |
| WAYFAIR, LLC; and JOHN DOES 1-5 AND 6-10, | *Electronically Filed* |
| Defendants. | |

## DEFENDANT'S BRIEF IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

*On the Brief:*
Ivan R. Novich, Esq.
Rachel Simone Frey, Esq.

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ................................................................................4

    A.    Gaines Worked In The Warehouse For Wayfair..................................4

    B.    Wayfair Has An Established Anti-Discrimination Policy ..................4

    C.    To Protect Its Workers, Wayfair Implemented A COVID-19 Policy........................................................................................5

    D.    The Policy Barred Employees With Symptoms From Coming To Work.....................................................................................5

    E.    Wayfair Made Gaines Aware Of Its COVID-19 Policy ....................6

    F.    Gaines Violated Wayfair's COVID-19 Policy....................................7

    G.    Gaines Admitted That He Should Not Have Reported To Work ........8

    H.    Wayfair Discharged Gaines For Violating Its Policy .........................9

LEGAL ARGUMENT..................................................................................9

I.    THE STANDARD OF REVIEW FOR DECIDING A SUMMARY JUDGMENT MOTION................................................................................9

II.    THE COURT SHOULD DISMISS GAINES'S DISABILITY DISCRIMINATION CLAIM ........................................................................11

    A.    Gaines Cannot Satisfy The Prima Facie Elements............................12

        1.    Gaines Was Not "Disabled" Under The NJLAD ...................13

            a.    Gaines Admitted That He "Felt Fine," Could Work, And Did Not Seek Medical Treatment..............14

            b.    Gaines Had No Long-Lasting Effects ...........................15

            c.    After Quarantining For Two Weeks, Gaines Went Back To Work Without Any Difficulty.........................15

# TABLE OF CONTENTS
### (CONTINUED)

PAGE

2. There Is No Inference Of Discrimination That Can Be Drawn From The Facts Surrounding His Discharge ...............17

B. Gaines Has No Evidence That Wayfair's Stated Reason For Discharging Him Was A Pretext For Disability Discrimination .......18

1. Gaines Cannot Show That Wayfair Manufactured The Reason For His Discharge .......................................................19

2. There Is No Evidence That Wayfair Harbored A Discriminatory Animus Against Gaines Because He Had COVID-19.................................................................................20

III. GAINES' PERCEIVED DISCRIMINATION CLAIM SHOULD BE DISMISSED ...............................................................................21

A. Gaines Cannot Establish A Prima Facie Case...................................21

1. Wayfair Did Not Perceive Gaines As Disabled......................22

a. There Are No Comments Or Actions Reflecting That Anyone Perceived Gaines As Being Disabled......23

2. Gaines's Discharge Did Not Occur Under Circumstances Giving Rise To An Inference of Discrimination ....................24

B. Gaines Is Incapable Of Proving Pretext .............................................24

IV. THE COURT SHOULD DISMISS GAINES' CLAIMS UNDER NJAC 12:70 ...............................................................................25

CONCLUSION ......................................................................................26

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Anderson v. Exxon Co.*,
89 N.J. 483 (1982) ...............................................................................12, 14, 22

*Bickerstaff v. Vassar Coll.*,
196 F.3d 435 (2d Cir. 1999) ...............................................................................19

*Brill v. Guardian Life Ins. Co.*,
142 N.J. 520 (1995) .........................................................................................9, 10

*Coleman v. Children's Hosp. of Philadelphia*,
No. CV 22-1445, 2023 WL 7412923 (E.D. Pa. Nov. 8, 2023) ...................15, 16

*El v. SEPTA*,
479 F.3d 232 (3d Cir. 2007) ...............................................................................19

*El-Sioufi v. St. Peter's Univ. Hosp.*,
382 N.J. Super. 145 (App. Div. 2005)..................................................................18

*Grande v. St. Clare's Health Sys.*,
230 N.J. 1 (2017) .................................................................................................22

*Guzman v. M. Teixeira International, Inc.*
476 N.J. Super. 64 (App. Div. Jun. 7, 2023) ...............................................*passim*

*Henry v. N.J. Dep't of Human Servs.*,
204 N.J. 320 (2010) .......................................................................................11, 18

*Mandel v. UBS/Painewebber, Inc.*,
373 N.J. Super. 55 (App. Div. 2004)....................................................................19

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*,
477 U.S. 574 (1986)..............................................................................................10

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)..............................................................................................11

*Muller v. Exxon Research*,
345 N.J. Super. 595 (App. Div. 2001)..................................................................12

# TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

*Payne v. Woods Servs., Inc.*,
    520 F. Supp. 3d 670 (E.D. Pa. 2021)................................................................16

*Thorogood v. Liberty Coca-Cola Beverages, LLC*,
    No. CV 21-5149, 2022 WL 16836975 (E.D. Pa. Nov. 9, 2022) ........................16

*Triffin v. American International Group, Inc.*,
    372 N.J. Super. 517 (App. Div. Nov. 3, 2004) ....................................................10

*Victor v. State*,
    203 N.J. 383 (2010) ......................................................................................12, 22

*Webster v. Dollar Gen., Inc.*,
    197 F. Supp. 3d 692 (D.N.J. 2016)....................................................................19

*Whitebread v. Luzerne Cnty.*,
    No. 3:22-CV-00133, 2023 WL 349939 (M.D. Pa. Jan. 20, 2023) ....................16

*Wild v. Carriage Funeral Holdings, Inc.*,
    458 N.J. Super. 416 (App. Div. 2019), *aff'd but criticized on other
    grounds*, 241 N.J. 285, 227 A.3d 1206 (2020) ..................................................22

*Young v. Hobart W. Grp.*,
    385 N.J. Super. 448 (App. Div. 2005)..........................................................12, 17

*Zive v. Stanley Roberts, Inc.*,
    *182 N.J. 436* (2005) ........................................................................................11

**Statutes**

N.J.S.A. 10:5-5(q)..............................................................................................13, 14

**Other Authorities**

Governor Murphy in Executive Order No. 103 (2020) ..........................................25

N.J.A.C. 12:70..............................................................................................*passim*

## **PRELIMINARY STATEMENT**

This case arises from Plaintiff Darryl Gaines's ("Plaintiff" or "Gaines") blatant disregard of Wayfair LLC's ("Wayfair" or the "Company") COVID-19 policies. In early 2021, during the height of the COVID-19 pandemic and before vaccines became widely available, Wayfair had policies designed to keep its warehouse associates safe. Specifically, Wayfair prohibited warehouse associates from reporting to work with common COVID-19 symptoms such as fever or chills, cough, shortness of breath or difficulty breathing, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting, or diarrhea. Under Wayfair's COVID-19 policies in place at the time, any associate experiencing such symptoms were required to take a COVID-19 test to confirm whether his/her symptoms were, in fact, attributable to COVID19, and remain out of work until the test results came back and Wayfair cleared the associate to return to work.

At the end of March 2021, Gaines, a Wayfair warehouse associate, reported to work at Wayfair's warehouse facility located in Cranbury, New Jersey. When he reported to work at that time, he had symptoms of nausea. A few days later, he came to work with a runny nose, scratchy throat, and cough. At his deposition, Gaines admitted that he knew he had these symptoms, but that he nonetheless decided, on his own, to report to work. Upon realizing Gaines had COVID-19 symptoms,

Gaines's supervisor sent Gaines home, and instructed him to take a COVID-19 test. Gaines took the test, and tested positive for COVID-19. He then informed his supervisor and Wayfair's human resources team of his positive test results. Shortly afterward, Wayfair terminated him for violating its COVID-19 policies.

In his Complaint, Gaines asserts claims for wrongful discharge and disability discrimination under the New Jersey Law Against Discrimination ("NJLAD") (Count I), perceived disability discrimination (Count II), and violation of N.J.A.C. 12:70 (Count III). According to Gaines, when he had COVID-19 in March of 2021, this qualified as a "disability" under the NJLAD. He accuses Wayfair of engaging in disability and perceived disability discrimination by discharging him. He further claims that Wayfair violated N.J.A.C. 12:70 by allegedly discharging him for taking time off from work while he had the virus. Yet, for the reasons discussed below, Gaines's claims lack merit and cannot withstand Wayfair's summary judgment motion.

First, Gaines cannot establish a *prima facie* case of disability discrimination. Simply put, his COVID-19 did not qualify as "disability" under the law. At most, he had an ephemeral condition, during which he admittedly "felt fine." Moreover, the applicable case law holds that COVID-19 is not considered a "disability" under the NJLAD, unless there is evidence of long-lasting effects or the plaintiff suffers

from long COVID.  Here, there is no evidence Gaines experienced any lasting symptoms that would limit his ability to work.

As for his perceived disability discrimination claim, Gaines cannot establish a *prima facie* case because has no evidence that anyone at Wayfair viewed him as disabled.  While he had COVID-19, he never discussed with anyone at Wayfair how he was feeling or doing.  Nor did anyone make any comments or take any actions toward him demonstrating that they thought of him as disabled.  For example, there were no comments by anyone about his physical capabilities, limitations, or restrictions.

Beyond that, the Court should grant summary judgment and dismiss Gaines's disability and perceived disability discrimination claims because he cannot establish the mandatory element of pretext necessary to maintain these claims.  Simply put, his discharge had nothing to do with the fact that he contracted COVID-19.  At his deposition, Gaines admitted that he knew of other Wayfair warehouse associates who caught COVID-19 and were *not* terminated.  But unlike Gaines, these other Wayfair warehouse associates did not put their coworkers at risk by reporting to work with COVID-19 symptoms in violation of Wayfair's policies.

Regarding his claim under N.J.A.C. 12:70 that Wayfair terminated his employment because he took time off work due to COVID-19, there is no evidence to support this claim.  Indeed, at his deposition, Gaines admitted that he does not

believe this was the reason for his discharge. Thus, the Court should grant Wayfair's summary judgment motion, and dismiss the Complaint with prejudice in its entirety.

## STATEMENT OF FACTS

### A.   Gaines Worked In The Warehouse For Wayfair.

On November 9, 2020, Gaines began working for Wayfair as a temporary seasonal worker. (Gaines Dep.,[1] 27:19-28:2). Later he transitioned to a regular position as a Warehouse Associate in Quality Control, where he worked on his shift along with at least five other associates in Quality Control. (Id., 28:6-8; 30:16-24). Quality Control Supervisor Nick Segura supervised Gaines. (Id., 29:1-2; 31:4-6).

### B.   Wayfair Has An Established Anti-Discrimination Policy.

At the start of his employment, Gaines received a copy of Wayfair's Employee Guide. (Id., 32:24-34:3; "Frey Decl.," Exhibit B; Declaration of Shellie Weber ("Weber Decl.") Exhibit A). Gaines understood that Wayfair has a policy prohibiting discrimination, (Gaines Dep., 35:18-21), which is contained in Wayfair's Employee Guide. As explained by the Employee Guide, "[a]ny employee who believes he or she has been subjected to any form of unlawful discrimination or other violation of this policy is encouraged and expected to notify Talent Management immediately." (Weber Decl., Exhibit A).

---

[1] "Gaines Dep." refers to the relevant, full pages from Gaines' deposition that Defendant relies upon in support of its motion and that are attached as Exhibit A to the concurrently filed Declaration of Rachel Simone Frey ("Frey Decl.").

**C.**     **To Protect Its Workers, Wayfair Implemented A COVID-19 Policy.**

As a result of the COVID-19 pandemic, Wayfair implemented a number of policies to ensure the safety of its workers.  Those policies included prohibiting workers from reporting to work with any common COVID-19 symptoms.  (<u>Weber Decl.</u>, Exhibit C, <u>Frey Decl.</u>, Exhibit C-F).  The policy stated, "Any employee that is experiencing symptoms of the COVID-19 virus **may not report to work, and must contact Talent Management immediately.**"  (<u>Weber Decl.</u>, Exhibit C; <u>Frey Decl.</u>, C).  The policy went on to say, "Common symptoms included, but are not limited to: Fever or Chills; Cough; Shortness of breath or difficulty breathing; Fatigue; Muscle or body aches; Headache; New loss of taste or smell; Sore throat; Congestion or runny nose; Nausea or vomiting; Diarrhea."   (<u>Weber Decl.</u>, Exhibit C).

**D.**     **The Policy Barred Employees With Symptoms From Coming To Work.**

Wayfair's COVID-19 policy required associates to take a COVID-19 test if they were experiencing symptoms, and to stay out of work until those test results came back and Talent Management cleared them to return to work.  (<u>Weber Decl.</u>, Exhibit C; <u>Frey Decl.</u>, Exhibit C).   Thus, the policy took into account that COVID-19 symptoms overlap considerably with symptoms of other illnesses and conditions

by requiring employees to take a COVID-19 test to ensure the symptoms were not COVID-19.  (<u>Weber Decl.</u>, Exhibit C; <u>Frey Decl.</u>, Exhibit C).

Wayfair communicated the policy and list of common symptoms to employees through posters around the building, including in the break room and on entrance and exit doors.  (<u>Gaines Dep.</u>, 46:5-15).  Supervisors also regularly reviewed the policy and common symptoms during startup meetings.  (<u>Id.</u>, 43:10-47:7).  Additionally, Wayfair did not penalize associates who missed work due to COVID-19 symptoms, and also gave associates emergency paid time off ("EPTO") for missing work due to COVID-19 related reasons.  (<u>Id.</u>, 37: 18-24, 109:16-19).

Under Wayfair's policy, if an associate felt sick and attributed that sickness to something other than COVID-19, the associate must stay home (on Wayfair's dime) and go through the simple act of taking a COVID-19 test to ensure those symptoms (that could be another illness) were not in fact COVID-19.  (<u>Id.</u>, 37:18-24, 41:6-42:5; <u>Weber Decl.</u>, Exhibit C; <u>Frey Decl.</u>, Exhibit C).  By doing this, Wayfair made it clear that the safety of its workforce came first.  (<u>Weber Decl.</u>, Exhibit C; <u>Frey Decl.</u>, Exhibit C).

### E.   <u>Wayfair Made Gaines Aware Of Its COVID-19 Policy.</u>

Gaines knew about Wayfair's COVID-19 policy.  He saw the posters around the warehouse.  (<u>Gaines Dep.</u>, 38:17-41:9).  He also knew the common symptoms

of COVID-19 from his supervisor reiterating the policy at startup meetings, and from his general knowledge from the news and other media sources.  (Id., 43:22-47:5).

Further, around March 7, 2021, Gaines missed work because he went to the doctor for an unrelated issue and had to take a COVID-19 test.  (Id., 66:4-68:1-25). Gaines followed Wayfair's policy and notified Talent Management that he had taken a COVID-19 test, and waited for the results and to be told he could return to work. (Id., 68:1-69:25).   Wayfair compensated him for the missed time, and Gaines returned without issue when Talent Management cleared him.  (Id., 68:1-71:5).

### F.    Gaines Violated Wayfair's COVID-19 Policy.

On March 28, 2021, Gaines came to work feeling nauseous, which he knew was a symptom of COVID-19: "Q. Okay.  And do you understand that nausea is a symptom of COVID?  A.  Yes." (Id., 72:15-17).  He asked his supervisor if he could go home, which his supervisor permitted.  (Id., 72:15-73:25).  He did not take a COVID-19 test.  (Id., 64:13-65:17).  The next day on March 29, 2021, he reported to work despite having a cough, which he also understood to be a symptom of COVID-19.  (Id., 82:12-17) ("Q.  Okay. And then cough was also one of your allergy symptoms, right?  A.  Yes.  Q.  And that's also a symptom of COVID, right? A.  Yes.").  He did not take a COVID-19 test then either and worked his entire shift. (Id., 66:4-67:22).

Then, on March 30, 2021, Gaines came to work with a runny nose, sore throat, and cough, which he knew were symptoms of COVID. (Id., 82:7-17; 95:25-96:8) ("Do you understand that those allergy symptoms: Runny nose, a cough, and scratchy throat, are also COVID Symptoms . . . A. Yes. Q. Okay. And you did go to work knowing you had those symptoms. A. Allergy symptoms, yes."). He admits that he worked for thirty minutes with those symptoms. (Id., 80:7-9). After working those thirty minutes, Gaines approached his supervisor Nick Segura because he noticed he lost his sense of smell. (Id., 80:7-9, 82:20-83:1). At that point, Segura told him to go home and take a test, and also let him know that he would not be penalized for any missed time. (Id., 82:20-83:8). Gaines finally took a COVID-19 test on that day. (Id., 84:17-24).

### G.   Gaines Admitted That He Should Not Have Reported To Work.

On April 2, 2021, Gaines received the test results, confirming he had COVID-19. (Gaines Dep., 85:15-22; Frey Decl., Exhibit J). Gaines realized the symptoms he thought to be allergy symptoms were actually COVID-19 symptoms. (Gaines Dep., 89:12-90:3). He proceeded to let Talent Management know his test results and apologized to Segura and his team: "Unfortunately I have covid I'm so sorry for my boss nick and my team, I hope you can forgive me." (Frey Decl., Exhibit G). Gaines explained he apologized because in hindsight he realized he came to work

with COVID-19 and he "just didn't want anybody else to be infected by it." (<u>Gaines Dep.</u>, 88:11-90:3).

### H.    <u>Wayfair Discharged Gaines For Violating Its Policy.</u>

Wayfair terminated Gaines on April 7, 2021 after concluding he violated the Company's COVID-19 policy by reporting to work with COVID-19 symptoms. (<u>Frey Decl.</u>, Exhibit H).  Wayfair has terminated at least 13 other associates around that time period for reporting to work with COVID-19 symptoms.  (<u>Weber Decl.</u>, ¶ 9).  Additionally, Wayfair did not terminate associates who caught COVID-19 and followed the company's policy – testing, and staying out of work until told otherwise by Talent Management.  (<u>Weber Decl.</u>, ¶ 10; <u>Gaines Dep.</u>, 105:8-107:3).

<b><u>LEGAL ARGUMENT</u></b>

### I.    <u>THE STANDARD OF REVIEW FOR DECIDING A SUMMARY JUDGMENT MOTION.</u>

Summary judgment is granted in favor of a moving party if the record shows "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."  *R.* 4:46-2(c).  In determining whether to dismiss a case at summary judgment, "the motion judge [must] consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party." *Brill v. Guardian Life Ins. Co.*, 142 N.J. 520, 540 (1995).

To defeat a summary judgment motion, the opposition must establish the existence of a factual dispute that is "substantial" in nature. *Brill*, 142 N.J. at 529-530. But "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact." *Id.* at 540; *accord, Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 477 U.S. 574, 586 (1986) ("[W]hen the moving party has carried its burden [under the summary judgment rule], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). "That the trier of fact makes determinations as to credibility does not require a court to turn a blind eye to the weight of the evidence; the opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Triffin v. American International Group, Inc.,* 372 N.J. Super. 517, 523 (App. Div. Nov. 3, 2004).

When the undisputed facts are such that the moving party is entitled to judgment as a matter of law, summary judgment is an effective means for the efficient disposition of a claim or cause of action whose trial otherwise would be an unnecessary and wasteful expense of the parties' and court's time and resources. *See*, e.g., *Brill*, 142 N.J. at 541 (internal citations omitted) (summary judgment can "effectively eliminate from crowded court calendars cases in which a trial would serve no useful purpose and cases in which the threat of trial is used to coerce a settlement").

In the present case, Gaines has three claims: disability discrimination under the NJLAD (Count I), perceived disability discrimination under the NJLAD (Count II), and violation of N.J.A.C. 12:70 (Count III).[2]  Regarding Counts I and II, these claims follow the *McDonnell Douglas* burden shifting analysis.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In other words, plaintiff must first establish a *prima facie* case, and, if he is able to do so, then he must prove that defendant's stated reason for discharging him is a pretext for unlawful discrimination.  *See Henry v. N.J. Dep't of Human Servs.*, 204 N.J. 320, 331 (2010) (quoting *Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449* (2005)).

Here, for the reasons set forth below, Gaines cannot create a genuine issue of material fact on each and every element of his claims.  Thus, the Court should grant Wayfair's summary judgment motion and dismiss the Complaint with prejudice in its entirety.

## II.    THE COURT SHOULD DISMISS GAINES'S DISABILITY DISCRIMINATION CLAIM.

In Count I of the Complaint, Gaines avers that Wayfair violated the NJLAD by discriminatorily discharging him based on his disability, which he claims was COVID-19.  As explained below, Gaines cannot establish a *prima facie* case to

---

[2] On October 15, 2021, Plaintiff stipulated to dismiss Count IV of the Complaint. *See* Dkt. No. 10.

maintain this claim.  In particular, he is unable to satisfy the first and fourth required elements.

Another independent reason to dismiss Gaines's disability discrimination claim is that there is no genuine issue of material fact on the required element of pretext.  Thus, Gaines's disability discrimination claim is unsustainable as a matter of law and summary judgment is warranted.

**A.    Gaines Cannot Satisfy The *Prima Facie* Elements.**

To set forth a *prima facie* case of disability discrimination under the NJLAD, Gaines must show (1) that he is a member of a protected class; (2) that he was qualified to perform the essential functions of the position of employment; (3) that he suffered an adverse employment action despite being qualified for his job; and (4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination.  *Victor v. State*, 203 N.J. 383, 408-09 (2010) (citing *Anderson v. Exxon Co.*, 89 N.J. 483, 492 (1982)); *Muller v. Exxon Research*, 345 N.J. Super. 595, 602 (App. Div. 2001); *Young v. Hobart W. Grp.*, 385 N.J. Super. 448 (App. Div. 2005).

Here, as explained below, Gaines has adduced no evidence showing that he had a "disability," or that his termination occurred under circumstances giving rise to an inference of discrimination.  Thus, summary judgment is appropriate because

Gaines is unable to satisfy the required elements necessary to set forth a *prima facie* case of disability discrimination.

### 1.   Gaines Was Not "Disabled" Under The NJLAD.

The NJLAD defines "disability" as a

> physical or sensory disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness including epilepsy and other seizure disorders, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or hearing impairment, muteness or speech impairment, or physical reliance on a service or guide dog, wheelchair, or other remedial appliance or device, or any *71 mental, psychological, or developmental disability, including autism spectrum disorders, resulting from anatomical, psychological, physiological, or neurological conditions which prevents the typical exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques. Disability shall also mean AIDS or HIV infection.

N.J.S.A. 10:5-5(q).

While the term "disability" in the NJLAD is not limited to severe or immutable disabilities, "[n]ot every illness will constitute a disability under the [NJ]LAD." *Guzman v. M. Teixeira International, Inc.* 476 N.J. Super. 64, 72 (App. Div. Jun. 7, 2023).  Moreover, the NJLAD "must be sensibly and practically applied . . . [and] construed 'fairly and justly with due regard to the interests of all parties.'"

*Guzman,* 476 N.J. Super. at 72 (quoting *Andersen v. Exxon Co.*, 89 N.J. 483, 496, (1982).

Moreover, Recently, the New Jersey Appellate Division held that COVID-19 did not constitute a disability under the NJLAD when plaintiff merely felt "cold, clammy, and weak" and did not have any lasting symptoms that prevented him from returning to work. *See Guzman,*476 N.J. Super. at 72-73. In determining that COVID-19 did not constitute a disability in *Guzman*, the Appellate Division emphasized that the plaintiff did not seek medical treatment, he offered to return to work, and he was able to work while experiencing symptoms. *Guzman,*476 N.J. Super. at 72-73. Thus, a transient and minor bout of COVID-19 is not a qualified disability under the NJLAD because it is unrelated to any "physical disability, infirmity, malformation or disfigurement which is caused by bodily injury, birth defect, or illness." *See* N.J.S.A. 10:5-5(q).

### a. Gaines Admitted That He "Felt Fine," Could Work, And Did Not Seek Medical Treatment.

Turning to the case at hand, Gaines testified that he "felt fine" while he had COVID-19 and, like the plaintiff in *Guzman*, he was able to work, and indeed did work, while experiencing symptoms. (Gaines Dep., 76:7-14; 100:13-21; 101:4-10). At his deposition, Gaines testified, "[t]here's been times when, you know, my stomach would hurt, but other than that, I was in bed playing video games most of the time and just recovering." (Id., 101:10-13). In fact, all his symptoms went away

very quickly except loss of taste and smell, which would not impact his ability to work as a warehouse associate.  (<u>Id.</u>, 102:5-12; <u>Frey Decl.</u>, Exhibit I).  Further, like the plaintiff in *Guzman*, Gaines has never sought medical treatment because of COVID-19.  (<u>Id.</u>, 99:19-22; 103:18-21).

### b.  <u>Gaines Had No Long-Lasting Effects.</u>

Moreover, at his deposition, Gaines admitted that he had no lasting effects of COVID-19 aside from loss of taste and smell.  (<u>Gaines Dep.</u>, 101:10-102:12) ("Well, the fever and everything else has gone" and "[t]he runny nose did not last long.  The coughing, that stopped.").  In point of fact, he testified that after he tested positive for COVID-19 he "I felt fine.  I didn't have a fever.  I just couldn't go outside for about two weeks.  Other than that, that was really it." (<u>Id.</u>, 100:13-17).

### c.  <u>After Quarantining For Two Weeks, Gaines Went Back To Work Without Any Difficulty.</u>

After he quarantined for two weeks with COVID-19, Gaines went back to work as a parking lot attendant for another employer (not Wayfair).  (Gaines Dep., 126:3-14).  He had no issues or difficulties performing this job or working.  (<u>Id.</u>, 125:18-19).

Thus, based on his own deposition admissions, Gaines's COVID-19, which for the most part lasted a few weeks, did not amount to a "disability" under the NJLAD.  *See Coleman v. Children's Hosp. of Philadelphia*, No. CV 22-1445, 2023 WL 7412923, at *5 (E.D. Pa. Nov. 8, 2023) (finding Plaintiff did not adequately

allege she was part of a protected class when she "merely alleges that she was terminated based on her inability to return to work after suffering long-term effects from COVID-19"); *Coleman v. Children's Hosp. of Philadelphia*, No. CV 22-1445, 2023 WL 7412923, at *5 (E.D. Pa. Nov. 8, 2023) (finding COVID-19 did not constitute a disability when Plaintiff "offers no medical documentation that her COVID symptoms were ongoing, nor did she request an accommodation or notify anyone at [the company] of an ongoing COVID-related condition."); *Whitebread v. Luzerne Cnty.*, No. 3:22-CV-00133, 2023 WL 349939, at *4 (M.D. Pa. Jan. 20, 2023) ("mere infection with COVID-19 infection, without noting symptoms or limitations stemming from the infection, does *not* qualify as an impairment under the ADA."); *Thorogood v. Liberty Coca-Cola Beverages, LLC,* No. CV 21-5149, 2022 WL 16836975, at *2 (E.D. Pa. Nov. 9, 2022) (finding plaintiff's COVID-19 diagnosis did not render him disabled when he "has not alleged any specific symptoms or impairments he suffered because of COVID-19, nor has he alleged what 'major life activity' or activities his illness prevented him from performing."); *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 679 (E.D. Pa. 2021) ("Plaintiff has not alleged any facts regarding his symptoms or impairments as a result of his COVID-19 diagnosis, and has not alleged what "major life activity" or activities he was unable to perform as a result."). As a result, the Court should grant Wayfair's

motion for summary judgment and dismiss Gaines's disability discrimination claim because he cannot establish a *prima facie* case.

**2.    There Is No Inference Of Discrimination That Can Be Drawn From The Facts Surrounding His Discharge.**

Even if Gaines could demonstrate he was disabled (which he cannot), he cannot establish the fourth required element necessary to withstand summary judgment and maintain a *prima facie* case of disability discrimination.  In other words, Gaines lacks evidence showing that his termination occurred under circumstances giving rise to the inference that Wayfair terminated him because of his positive COVID-19 test or illness.  As Gained himself admitted at his deposition, no one at Wayfair made any comments at all about him having COVID-19.  (Gaines Dep., 98:25-99:11).

In fact, Gaines testified at his deposition that his disability discrimination claim is based on nothing more than that he "got terminated with COVID without, in [his] opinion, proper explanations or, you know, ways about handling the situation." (Gaines Dep., 105:8-15).  Yet it is well-settled that simply having a disability and then being terminated is not enough to sustain a claim of discrimination.  *Young v. Hobart W. Grp.* 385 N.J. Super. at 467 ("the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two.").

In the case at bar, Gaines does not allege Segura, his manager, or anyone in Talent Management discriminated against him.  (<u>Gaines Dep.</u>, 104:11-105:15). Tellingly, Gaines himself admitted he has no evidence that Wayfair terminated him for any reason aside from his decision to report to work with COVID-19 symptoms. (<u>Gaines Dep.</u>, 108:20-109:2).  Thus, Gaines cannot point to any evidence showing that his termination occurred under circumstances giving rise to an inference of disability discrimination.  Consequently, the Court should grant summary judgment because Gaines cannot satisfy the required elements to maintain a *prima facie* case of disability discrimination.

### B. <u>Gaines Has No Evidence That Wayfair's Stated Reason For Discharging Him Was A Pretext For Disability Discrimination.</u>

To establish pretext, Gaines must demonstrate that Wayfair's articulated reason for discharging him was a pretext for disability discrimination, rather than the true reason for the termination decision.  *Henry*, 204 N.J. at 331 (2010).  Gaines's pretext burden is "not insignificant," and "requires more than the simple identification of an act or event that [he] believes bespeaks discrimination."  *El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 173, 174 (App. Div. 2005).

Rather, Gaines must show both that Wayfair's stated reasons for terminating him were false, and that the decision was driven by discriminatory intent.  *Viscik*, 173 N.J. at 14.  In this regard, he may do so only through "hard," "concrete" evidence. *El v. SEPTA*, 479 F.3d 232, 237 n.6 (3d Cir. 2007); *Webster v. Dollar*

-18-

*Gen., Inc.*, 197 F. Supp. 3d 692, 702 (D.N.J. 2016).  Further, as a matter of law, his subjective beliefs of discrimination cannot preclude summary judgment.  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999) ("feelings and perceptions of being discriminated against are not evidence of discrimination."); *Mandel v. UBS/Painewebber, Inc.*, 373 N.J. Super.  55, 79 (App. Div. 2004) ("'Perception' like 'speculation' and 'suspicion' cannot support a cause of action" under the LAD).

### 1.   Gaines Cannot Show That Wayfair Manufactured The Reason For His Discharge.

Gaines cannot show that Wayfair's stated reason for terminating his employment (*i.e.*, violation of its COVID-19 policies) is a *post hoc* fabrication designed to camouflage intentional disability discrimination.  Indeed, at his deposition, Gaines admitted that his coming to work with symptoms of COVID was a mistake and is what led to his discharge.  (Gaines Dep., 91:17-92:15, 95:25-96:8).  Further, Gaines knew about Wayfair's policy prohibiting employees from reporting to work with common COVID-19 symptoms.  (Id., 41:6-9). Wayfair put posters around the warehouse with its policy and Gaines's supervisor repeatedly went over the policy at startup meetings.  (Id., 41:6-9, 38:17-41:9).

It is undisputed that Gaines reported to work with COVID-19 symptoms on March 28, March 29, and March 30.  (Id., 75:9-11, 76:7-9, 113:11-13). It is also undisputed that Wayfair informed Gaines it terminated him for violating its COVID-19 policy.  (Gaines Dep., 108:20-109:2; Frey Decl., Exhibits C-F).  Thus, Gaines

can point to no evidence that Wayfair ever provided contradictory or shifting explanations for his discharge.

Though Gaines appears to find his termination unfair because he believed he was experiencing allergy symptoms, he admitted at his deposition that his alleged allergy symptoms were the same as COVID-19 symptoms.  (Gaines Dep., 89:24-90:3).  Moreover, Gaines admitted that he realized later that the symptoms were not allergy symptoms at all but rather COVID-19 symptoms – a situation Wayfair's COVID-19 policy was designed to guard against.  (Id., 89:24-90:3).  Thus, he apologized to his team, whom he had exposed to COVID-19.

## 2. There Is No Evidence That Wayfair Harbored A Discriminatory Animus Against Gaines Because He Had COVID-19.

Gaines cannot point to any evidence that his catching COVID-19 played a factor in Wayfair's decision to terminate his employment.  On the contrary, it is undisputed that Wayfair did not terminate associates for contracting COVID-19. (Gaines Dep., 109:23-4).  Gaines testified at his deposition that he knew of more than one associate that contracted COVID-19 and returned to work without issue. (Id.). In point of fact, he did not know of any associates terminated after testing positive for COVID-19.  (Id., 109:23-110:4).  And, Wayfair consistently applied its COVID-19 policy, terminating other associates for reporting to work with COVID-19.  (Weber Decl., ¶ 9).

Gaines simply has no evidence that Wayfair terminated him because he contracted COVID-19, rather than because he violated its COVID-19 policy by reporting to work while experiencing symptoms.  (Gaines Dep., 108:20-109:2).  It would have been quite a simple matter for Gaines to take a COVID-19 test on March 28, 29, or 30, when he felt sick, and for him wait to see the test results.  Instead, he chose and decided to not test and to report to work with symptoms of COVID.  This was a clear violation of Wayfair's written COVID-19 policy.  Hence, the Court should grant summary judgment and dismiss with prejudice Count I of the Complaint for disability discrimination under the NJLAD.

## III.   GAINES' PERCEIVED DISCRIMINATION CLAIM SHOULD BE DISMISSED.

In Count II of the Complaint, Gaines alleges Wayfair discriminated against him because of a perceived disability, which he claims was COVID-19.  As shown below, Gaines's perceived disability discrimination claim is fatally flawed.  Thus, the Court should grant summary judgment and dismiss this claim.

### A.   Gaines Cannot Establish A *Prima Facie* Case.

To set forth a *prima facie* case of perceived disability discrimination, Gaines must show (1) that Wayfair perceived him as disabled; (2) that he was qualified to perform the essential functions of the position of employment; (3) that an adverse employment action occurred because of the perceived disability; and (4) that the adverse employment action occurred under circumstances that give rise to an

inference of discrimination.  *Grande v. St. Clare's Health Sys.*, 230 N.J. 1, 17-18 (2017); *Victor v. State*, 203 N.J. 383, 408-09 (2010) (citing *Anderson v. Exxon Co.*, 89 N.J. 483, 492 (1982)).

Here, Gaines cannot satisfy the first and fourth required prongs to sustain a *prima facie* case of perceived disability discrimination claim.  Indeed, Gaines has no evidence that Wayfair perceived him as disabled, or that it terminated him under circumstances giving rise to an inference of discrimination.  Thus, summary judgment is warranted.

### 1.    <u>Wayfair Did Not Perceive Gaines As Disabled.</u>

To establish this first element of a perceived disability discrimination case, a Plaintiff must show he "qualifies as an individual . . . who is perceived as having a disability, as that has been defined by statute."  *Guzman,* 476 N.J. Super. at 72-73 (quoting *Victor*, 203 N.J. at 409); *see also Wild v. Carriage Funeral Holdings, Inc.*, 458 N.J. Super. 416, 429 (App. Div. 2019) (to meet the first element of a *prima facie* case of perceived disability discrimination under the LAD, a plaintiff must allege "the employer's perception that the employee was disabled:), *aff'd but criticized on other grounds*, 241 N.J. 285, 227 A.3d 1206 (2020).

Applying this controlling law to the case at hand, Gaines cannot show Wayfair perceived him as disabled.  Put differently, Gaines cannot show that he has a non-limiting impairment that Wayfair mistakenly believed limited a major life activity.

As explained in Point II.A.1 (pages 12 to 17), not every illness is a disability, including COVID-19.

### a.    There Are No Comments Or Actions Reflecting That Anyone Perceived Gaines As Being Disabled.

Gaines has no evidence that anyone at Wayfair believed COVID-19 caused him to be disabled.  He does not claim Segura discriminated against him, nor did he ever describe to Segura or anyone else at Wayfair how COVID-19 affected him. (Gaines Dep., 102:16-103:17; 109:6-8).  Indeed, the only time he spoke to Segura after testing positive for COVID-19 was to ask Segura when he could return to work and Segura directed him to Talent Management.  (Id., 90:7-16).   Accordingly, Wayfair had every reason to believe Gaines had no lasting effects from COVID-19, as, like the plaintiff in *Guzman*, he indicated his ability to return to work.  *See Guzman*, 476 N.J. Super. at 72 ("In fact, he was feeling well enough that he felt able to and offered to return to work.").

Further, no one at Wayfair ever made comments about Gaines catching COVID-19 that would indicate a perception that it would limit his ability to perform his job duties.  (Gaines Dep., 102:16-103:17).  Thus, Gaines's perceived disability discrimination claim fails because he has no evidence that Wayfair believed he was disabled.  Consequently, given that Gaines is unable to satisfy the first required element to present a *prima facie* case of perceived disability discrimination, the Court should grant Wayfair's summary judgment motion and dismiss this claim.

**2.** **Gaines's Discharge Did Not Occur Under Circumstances Giving Rise To An Inference of Discrimination.**

As already explained at Point II.A.2 (pages 17 to 18) in connection with Gaines's disability discrimination claim, Gaines cannot show that Wayfair terminated him under circumstances giving rise to an inference of discrimination. This element is exactly the same for both his disability and perceived disability discrimination claims. As a result, the Court should grant Wayfair's summary judgment on Gaines's perceived disability discrimination claim because he cannot sustain a *prima facie* case.

**B.** **Gaines Is Incapable Of Proving Pretext.**

As explained at length above, Gaines admitted at his deposition that he knowingly reported to work with symptoms of COVID-19 in violation of Wayfair's COVID-19 policy. (Gaines Dep., 82:12-17). Thus, for the reasons set forth at length in Point II.B (pages 18 to 21), Gaines cannot show that Wayfair's stated reason for terminating him – namely, violation of its COVID-19 policies – was pretext for perceived disability discrimination.

As such, the Court should grant Wayfair's motion for summary judgment. In doing so, the Court should dismiss with prejudice Count II of the Complaint for perceived disability discrimination under the NJLAD.

## IV. THE COURT SHOULD DISMISS GAINES' CLAIMS UNDER NJAC 12:70.

In Count III of the Complaint, Gaines alleges Wayfair terminated him because he took protected time off work in violation of N.J.A.C. 12:70. However, Gaines never provided Wayfair with a written request from a medical professional indicating that he needed to take time off from work due to COVID-19, and Gaines himself does not believe that Wayfair terminated him for taking time off work related to COVID-19.

In response to the COVID-19 pandemic, New Jersey adopted N.J.A.C. 12:70, which states:

> (a) The purpose of this chapter is to effectuate P.L. 2020, c. 9, which, during the Public Health Emergency and State of Emergency declared by Governor Murphy in Executive Order No. 103 (2020) concerning the coronavirus disease 2019 (COVID-19) pandemic, prohibits an employer from terminating or otherwise penalizing an employee, if the employee requests or takes time off from work based on the written or electronically transmitted recommendation of a medical professional licensed in New Jersey that the employee take that time off for a specified period of time because the employee has, or is likely to have, an infectious disease that may infect others at the employee's workplace.

N.J.A.C. 12:70-1.1

Thus, this section of the administrative code prohibits employers from discharging or in any way retaliating against any employee "because such employee requests or takes protected leave." N.J.A.C. 12:70-1.4. Notably, N.J.A.C. 12:70

defines protected leave as "the written or electronically transmitted recommendation of a medical professional licensed in New Jersey." N.J.A.C. 12:70-1.2.

For two reasons, Gaines's claim under N.J.A.C. 12:70 fails.  First, he never provided Wayfair with a written or electronically transmitted request for time off work from a medical professional.  Rather, and quite the opposite, *Wayfair* required Gaines to take paid time off while he had COVID-19 symptoms, just as it does with all associates. Secondly, Gaines admitted at his deposition that he does not believe that Wayfair terminated him for any request for time off work.  (Gaines Dep., 109:12-22) ("Q. Okay.  So do you claim that Wayfair terminated you because you requested time off.  A. No.").  Accordingly, Gaines's N.J.A.C. 12:70 claim fails as a matter of law and, thus, the Court should dismiss with prejudice Count III of the Complaint.

## **CONCLUSION**

The issue in this case is whether Wayfair was within its legal rights to discharge Gaines after he admittedly violated Wayfair's COVID-19 policies by reporting to work knowing that he had symptoms of COVID-19 but without first taking a COVID test?  The answer is a resounding "yes."

Wayfair's COVID-19 policy was designed to protect and to safeguard the health and safety of its workers.  Under its policy, Wayfair required warehouse associates to take a COVID-19 test and avoid reporting to work if they are

experiencing COVID-19 symptoms, regardless of whether those symptoms overlapped with the symptoms of other illnesses or conditions, or the associate's subjective belief whether he or she had COVID-19.

Here, Gaines admits that he reported to work with common COVID-19 symptoms, but tries to excuse his conduct by claiming that he initially believed he was experiencing allergy symptoms. He thus exposed his supervisor and others on his team to COVID-19 because his symptoms happened to overlap with allergy symptoms. This is exact the situation Wayfair's policy was aimed at preventing, and had Gaines followed the policy, he would not have exposed his coworkers to COVID-19. Thus, the Court should grant summary judgment and dismiss Gaines's disability and perceived disability discrimination claims.

As for his N.J.A.C. 12:70 claim, it is undisputed that Gaines never provided a written or electronically transmitted request for leave from a medical professional, and Gaines himself does not believe his termination had anything to do with missing work because of his positive COVID-19 test.

As a result, Gaines' summary judgment should be granted and his Complaint should be dismissed with prejudice in its entirety.

Respectfully submitted,

**LITTLER MENDELSON, P.C.**
Attorneys for Defendant

Dated:  March 8, 2024            By: */s Rachel Simone Frey*
                                        Ivan R. Novich
                                        Rachel Simone Fry

4885-9481-9244.1 / 099173-1040