**LITTLER MENDELSON, P.C.**
Ivan R. Novich (N.J. Bar No. 038311996)
Rachel Simone Frey (NJ Bar No. 217592017)
One Newark Center, 8th Floor
Newark, New Jersey 07102
P: (973) 848-4700
E: inovich@littler.com
E: rfrey@littler.com
*Attorneys for Defendant*
*Wayfair LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DARRYL GAINES,<br><br>    Plaintiff,<br><br>v.<br><br>WAYFAIR, LLC and JOHN DOES 1-5 AND 6-10,<br><br>    Defendant. | Civil Action No. 1:21-cv-15843-KMW-EAP<br><br>**DEFENDANT'S RULE 56.1 SEPARATE STATEMENT OF UNDISPUTED, MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>*Via ECF* |

Under Rule 56.1 of the Federal Rules of Civil Procure, Wayfair LLC (improperly pled as "Wayfair, LLC") submits the following Separate Statement of Undisputed, Material Facts in support of its Motion for Summary Judgment:

1. Quality Control Supervisor Nick Segura supervised Gaines. (Id., 29:1-2; 31:4-6).

2. Gaines received a copy of Wayfair's Employee Guide. (Gaines Dep., 32:24-34:3; Frey Decl., Exhibit B; Declaration of Shellie Weber ("Weber Decl.") Exhibit A).

3. Gaines understood that Wayfair has a policy prohibiting discrimination, (Gaines Dep., 35:18-21), which is contained in Wayfair's Employee Guide. (Weber Decl., Exhibit A).

4. Wayfair's Employee Guide says, "[a]ny employee who believes he or she has been subjected to any form of unlawful discrimination or other violation of this policy is encouraged and expected to notify Talent Management immediately." (Weber Decl., Exhibit A).

5. During Gaines's employment, Wayfair's COVID-19 policy stated, "Any employee that is experiencing symptoms of the COVID-19 virus **may not report to work, and must contact Talent Management immediately.**" (Weber Decl., Exhibit C; Frey Decl., C-F).

6. The policy also said, "Common symptoms included, but are not limited to: Fever or Chills; Cough; Shortness of breath or difficulty breathing; Fatigue; Muscle or body aches; Headache; New loss of taste or smell; Sore throat; Congestion or runny nose; Nausea or vomiting; Diarrhea." (Weber Decl., Exhibit C; Frey Decl., C).

7. Wayfair's COVID-19 policy further stated: "Any employee experiencing symptoms of the COVID-19 virus may not report to work, and must contact Talent Management immediately." (Weber Decl., Exhibit C).

8. Wayfair communicated the policy and list of common symptoms to employees through posters around the building, including in the break room and on entrance and exit doors. (Frey Decl., C-F; Gaines Dep., 46:5-15) ("Q. And where do you recognize it from? A. Again, it's one of those posters that was plastered in the warehouse.")

9. Supervisors also regularly reviewed the policy and common symptoms during startup meetings. (Gaines Dep., 43:10-47:7).

10. Additionally, Wayfair did not penalize associates who missed work due to COVID-19 symptoms, and also gave associates emergency paid time off ("EPTO") for missing work due to COVID-19 related reasons. (Gaines Dep., (37:18-24, 109:16-19) ("But if it's COVID related, there's no points involved, and you will be paid for that day.").

11. Gaines knew about Wayfair's COVID-19 policy as he saw the posters around the warehouse. (Gaines Dep., 38:17-41:9).

12. He also knew the common symptoms of COVID-19 from his supervisor reiterating the policy at startup meetings, and from his general knowledge from the news and other media sources. (Gaines Dep., 43:13-47:5).

13. Around March 7, 2021, Gaines missed work because he went to the doctor for an unrelated issue and had to take a COVID-19 test. (Gaines Dep., 66:4-68:1-25).

14. Gaines notified Talent Management that he had taken a COVID-19 test, and waited for the results and to be told he could return to work. (Gaines Dep., 68:1-69:25).

15. Wayfair compensated him for the missed time, and Gaines returned when Talent Management cleared him. (Gaines Dep., 68:1-71:5).

16. On March 28, 2021, Gaines came to work feeling nauseous, which he knew was a symptom of COVID-19: "Q. Okay. And do you understand that nausea is a symptom of COVID? A. Yes." (Gaines Dep., 72:15-17).

17. Gaines asked his supervisor if he could go home, which his supervisor permitted. (Gaines Dep., 72:15-73:25).

18. Gaines did not take a COVID-19 test on March 28. (Gaines Dep., 66:4-67:22).

19. On March 29, 2021, Gaines reported to work with a cough, which he understood to be a symptom of COVID-19. (Id., 82:12-17) ("Q. Okay. And then cough was also one of your allergy symptoms, right? A. Yes. Q. And that's also a symptom of COVID, right? A. Yes.").

20. He did not take a COVID-19 test on March 29 and worked his entire shift. (Gaines Dep., 66:4-67:22).

21. On March 30, 2021, Gaines came to work with a runny nose, sore throat, and cough, which he knew were symptoms of COVID. (Gaines Dep., 82:7-17; 95:25-96:8) ("Do you understand that those allergy symptoms: Runny nose, a cough, and scratchy throat, are also COVID Symptoms . . . A. Yes. Q. Okay. And you did go to work knowing you had those symptoms. A. Allergy symptoms, yes.").

22. Gaines worked for thirty minutes with those symptoms. (Gaines Dep., 80:7-9) ("Q. How long did you work on March 30? A. Not even 30 minutes. Or roughly about 30 minutes.").

23. On March 30, Gaines approached his supervisor Nick Segura because he noticed he lost his sense of smell. (Gaines Dep., 82:20-83:1).

24. Segura told Gaines to go home and take a COVID-19 test, and also let Gaines know that he would not be penalized for any missed time. (Gaines Dep., 82:20-83:8).

25. Gaines took a COVID-19 test on March 30, 2021. (Gaines Dep., 84:17-24; Frey Decl., Exhibit J).

26. On April 2, 2021, Gaines received the test results, confirming he had COVID-19. (Gaines Dep., 85:15-22).

27. Gaines realized the symptoms he thought to be allergy symptoms were actually COVID-19 symptoms. (Gaines Dep., 89:12-90:3) ("Q. Okay. So initially you had thought it was allergy symptoms, but then once you got the positive test you realized it was probably COVID symptoms? A. Correct.").

28. Gaines sent an email to Talent Management and Segura saying: "Unfortunately I have covid I'm so sorry for my boss nick and my team, I hope you can forgive me." (Frey Decl., Exhibit G).

29. Gaines apologized because in hindsight he realized he came to work with COVID-19 and "just didn't want anybody else to be infected by it." (Gaines Dep., 88:11-90:3).

30. Wayfair terminated Gaines on April 7, 2021 for "disregarding Wayfair's policy of not coming on site when you are sick or experiencing any symptoms." (Frey Decl., Exhibit H).

31. Wayfair has terminated at least thirteen other associates around that time period for reporting to work with COVID-19 symptoms. (Weber Decl., ¶ 9).

32. Wayfair does not terminate associates who caught COVID-19 and followed the company's policy – testing, and staying out of work until told otherwise by Talent Management. (Weber Decl., ¶ 10; Gaines Dep., 105:8-107:3).

Respectfully submitted,

**LITTLER MENDELSON, P.C.**
Attorneys for Defendant


By: */s Rachel Simone Frey*
     Ivan R. Novich
     Rachel Simone Frey

Dated:  March 8, 2024