**NOT FOR PUBLICATION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| DARRYL GAINES,<br><br>        Plaintiff,<br><br>v.<br><br>Wayfair, LLC and JOHN DOES 1-5 AND 6-10,<br><br>        Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 21-15843 (KMW-EAP)<br><br>**OPINION** |

APPEARANCES:

Jacquelyn R. Matchett, Esq.
COSTELLO, MAINS & SILVERMAN, LLC
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054

       *Counsel for Plaintiff Darryl Gaines*


Ivan R. Novich, Esq.
Rachel Simone Frey, Esq.
LITTLER MENDELSON, P.C.
One Newark Center, 8th Floor
Newark, New Jersey 07102

       *Counsel for Defendant Wayfair LLC*

**WILLIAMS, District Judge:**

## I. INTRODUCTION

Plaintiff Darryl Gaines ("Plaintiff") brings this action against defendant Wayfair, LLC ("Defendant") alleging that Defendant discriminated against him based on his disability and the perception of his disability in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. §§ 10:5-1, *et seq.* when it terminated him for reporting to work with COVID-19 symptoms in violation of Defendant's policy.[1]

This matter comes before the Court on Defendant's Motion for Summary Judgment, (ECF No. 57). Plaintiff opposes this motion, (ECF No. 60). For the reasons that follow, Defendant's Motion for Summary Judgment will be **GRANTED**.[2]

## II. BACKGROUND

### a. Plaintiff Worked in Defendant's Warehouse

Plaintiff began working at Defendant's warehouse on November 9, 2020. (Pl.'s Counterstatement of Material Facts ("Pl.'s CSMF") ¶¶1, 3). Plaintiff was employed as a Warehouse Associate in Quality Control, where he worked his shift along with at least five other Quality Control associates. (*Id.* ¶3; Declaration of Rachel Simone Frey, Esq. ("Frey Decl."), Exhibit A - Deposition of Darryl Gaines dated Jan. 5, 2023 ("Pl. Dep."), 28:6-8, 30:16-24, ECF No. 57-3). Nicholas Segura ("Segura") supervised Plaintiff and the other Quality Control associates, with whom he worked directly. (Pl.'s CSMF ¶4; *see* Pl. Dep. 29:1-2, 31:4-6).

---

[1] Plaintiff has dismissed Count III of his Complaint, which alleged a violation of N.J.A.C. 12:70. (ECF No. 60).

[2] Pursuant to Local Civil Rule 78.1(b), this motion will be decided on the papers without oral argument.

2

### b. Defendant's Employment and COVID-19 Policies

Plaintiff signed an acknowledgment that he received a copy of Defendant's Employee Guide, which sets forth Defendant's policy prohibiting discrimination. (Pl. Dep. 32:24-34:3, 35:18-21; *see* Declaration of Shellie Weber ("Weber Decl."), Exhibit A – Defendant's Employee Guide, ECF No. 57-4). The Employee Guide instructs employees of their obligation to report any discrimination or harassment they witness to Defendant's Talent Management, which is the equivalent of Human Resources. (ECF No. 57-4 at 10; Pl.'s CSMF ¶7). Plaintiff also understood Defendant's policy prohibiting harassment and discrimination based on training Defendant provided to employees. (Pl. Dep. 35:6-21).

During the COVID-19 pandemic, Defendant implemented a policy prohibiting employees from reporting to work with symptoms associated with COVID-19. (Defendant's Statement of Material Facts ("SOMF") ¶5, ECF No. 57-2; *see also* Plaintiff's Response to SOMF ("Pl.'s Resp. to SOMF") ¶5, ECF No. 60-2). Defendant's COVID-19 policy stated: "Common symptoms included, but are not limited to: Fever or Chills; Cough; Shortness of breath or difficulty breathing; Fatigue; Muscle or body aches; Headache; New loss of taste or smell; Sore throat; Congestion or runny nose; Nausea or vomiting; Diarrhea." (Weber Decl., Exhibit C – Defendant's "Symptoms Awareness and Symptomatic Policy" Poster ("COVID-19 Policy Poster"), ECF No. 57-3 at 30-32; *see* Pl.'s CSMF ¶11). Defendant's COVID-19 policy further stated: "Any employee experiencing symptoms of the COVID-19 virus may not report to work, and must contact Talent Management immediately." (SOMF ¶7 (quoting Weber Decl., Ex. C); *see also* Pl.'s Response to SOMF ¶7). Defendant gave emergency paid time off ("EPTO") to employees who missed work due to COVID-19-related reasons. (SOMF ¶10 (quoting Pl. Dep., 37:18-24, 109:12-19); *see* Pl.'s Response to SOMF ¶10).

3

Defendant did not require its employees to sign an acknowledgment indicating that they received and reviewed its COVID-19 policies. (Pl.'s CSMF ¶13). Defendant distributed its COVID-19 policy on posters placed around Defendant's warehouse. (SOMF ¶8 (quoting Pl. Dep., 46:5-19); *see* Pl.'s Response to SOMF ¶11). Plaintiff testified that he recognized several posters around Defendant's warehouse concerning its COVID-19 policies. Plaintiff confirmed that he read one poster (the "Stop! Poster") posted on the door of the building that instructed employees with COVID-19 symptoms not to enter the building. (Pl. Dep. 40:17-41:25; Weber Decl., Ex. F, ECF No. 57-3).[3] Plaintiff understood that if he experienced any of those symptoms, he was to instead notify Segura, get tested, and inform Talent Management of the results. (Pl. Dep. 40:17-41:25).

Plaintiff also recalled that at morning "standup" meetings his supervisor, Segura, instructed Plaintiff what employees were supposed to do when experiencing COVID-19 symptoms. Pl. Dep. 43:10-15, 48:10-14, 48:23-49:2. In his deposition, Plaintiff recognized another poster that was distributed throughout the warehouse, the COVID-19 Policy Poster, which stated Defendant's COVID-19 policy. (Pl. Dep. 46:5-15; *see* Weber Decl., Ex. C). Though Plaintiff stated that he did not read *this* poster, he testified that he knew "it was there for sure," that he read "most things around the building," and he knew its contents because they were consistent with what Segura reiterated at morning standup meetings. (Pl. Dep. 46:16-47:7; *see* SOMF ¶¶11-12).

### c. Defendant's Termination and Enforcement of Defendant's Policies

On or around March 7, 2021, Plaintiff missed work because of a stomach issue and had to take the COVID-19 test. (SOMF ¶13). Plaintiff notified Segura and Talent Management that he received the test and waited for the results before he returned to work. (Pl. Dep. 68:1-70:17).

---

[3] The Stop! Poster listed "examples" of symptoms as: "fever, dry cough, shortness of breath, chills, muscle pain, sore throat, and/or new loss of taste/smell." (Weber Decl., Ex. F, ECF No. 57-3 at 38).

4

Plaintiff did not believe the issue was caused by COVID-19 and learned for the first time that he suffered from Crohn's disease.[4] (*Id.*) Though Plaintiff's test result was negative, he recalled being compensated with EPTO for the time he took off on March 7, 2021 because the testing was COVID-19 related. (*Id.* 67:5-25, 70:22-71:5).

On the morning of March 28, 2021, Plaintiff began to experience stomach pain after reporting to work, which he believed at the time resulted from eating a breakfast sandwich from 7-Eleven. (Pl. Dep. 71:15-72:14). Plaintiff testified that he understood nausea is a symptom of COVID-19. (*Id.* 72:15-17). Plaintiff asked his supervisor[5] if he could go home, and he was permitted to do so. (SOMF ¶17; *see* Pl.'s Response to SOMF ¶17). Plaintiff did not take a COVID-19 test that day. (SOMF ¶18; *see* Pl.'s Response to SOMF ¶18). On March 30, 2021, Plaintiff reported to work with nausea, a "scratchy throat, runny nose, and watery eyes." (Pl. Dep. 79:1-80:6). Plaintiff believed these symptoms were caused by his allergies. (Pl. Dep. 79:1-7, 80:23-81:1). Plaintiff worked his shift with these symptoms for approximately 30 minutes, when he noticed that he lost his sense of smell. (SOMF ¶¶22-23; *see* Pl.'s Response to SOMF ¶¶22-23). Plaintiff informed Segura, who directed Plaintiff to go home and take a COVID-19 test.[6] (SOMF ¶24; *see* Pl.'s Response to SOMF ¶24).

---

[4] Plaintiff does not argue or allege that his Crohn's disease constituted a disability pursuant to NJLAD or that he was discriminated against on the basis of his Crohn's disease. Instead, in his Complaint, Plaintiff alleges that his "positive COVID-19 diagnosis constitutes a disability under the LAD." (Complaint ¶12; ECF No. 1-1). Moreover, when Plaintiff was questioned during his deposition as to what disability his discrimination claim was based on, Plaintiff answered: "I believe COVID was a disability." (Pl. Dep. 103:22-104:3). When pressed if there were any other disabilities his claim was based on, Plaintiff stated: "That's all I could recall," and did not mention Crohn's disease whatsoever. (*Id.* 104:4-10).

[5] Segura was absent that day, so Plaintiff called the area supervisor. (Pl. Dep. 71:15-24).

[6] Plaintiff also testified that he did not recall telling Segura he had allergy symptoms. (Pl. Dep. 83:13-18).

Plaintiff took a COVID-19 test after leaving work and he received the results confirming that he had COVID-19 on April 2, 2021. (SOMF ¶¶25-26; *see* Pl.'s Response to SOMF ¶¶25-26). Plaintiff testified that upon receiving his positive test result, he realized the symptoms he thought were his allergies were probably COVID-19. (SOMF ¶27; Pl. Dep. 89:12-90:3). Plaintiff sent an email to Talent Management and Segura stating: "Unfortunately I have covid I'm so sorry for my boss nick and my team, I hope you can forgive me." (SOMF ¶28; *see* Pl.'s Response to SOMF ¶28). Plaintiff further testified that he apologized because after he found out his symptoms were not caused by allergies but by COVID-19, he "didn't want anybody else to be infected by it." (Pl. Dep. 89:2-11). Plaintiff testified that he understood if he had COVID-19 symptoms that he was not supposed to go to work. (*Id.* 108:14-17).

On April 7, 2021, Defendant terminated Plaintiff, the stated reason for which was "disregarding [Defendant's] policy of not coming on site when you are sick or experiencing any symptoms." (SOMF ¶30; *see* Pl.'s Response to SOMF ¶30). At least thirteen other associates were terminated around the same period as Plaintiff for reporting to work with COVID-19 symptoms. (Pl.'s CSMF, Exhibit G – Termination Reports Related to Defendant's COVID-19 Policy ("Termination Reports") (ECF No. 60-3 at 150-173); SOMF ¶31 (citing Weber Decl. ¶9); *but see* Pl.'s Response to SOMF ¶31).[7] Defendant "does not terminate associates that test positive for COVID-19 provided those associates follow its COVID-19 policies." (SOMF ¶32 (quoting Weber Decl. ¶10); *see* Pl.'s Response to SOMF ¶32 (admitting as to Weber Decl.)).

---

[7] Plaintiff's Response to Defendant's SOMF ¶31,"denie[s]" that thirteen associates were terminated for reporting to work with COVID-19 symptoms during the same timeframe but cites only to the reports that support Defendant's contention. (*See* Termination Reports, ECF No. 60-3 at 150-173).

6

## III.   LEGAL STANDARD

### a. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a genuine issue for trial.''" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the

7

facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### b. NJLAD

The NJLAD recognizes a disability discrimination claim, not only for employees who have had a disability at any time, but also for those who are "perceived as or believed to be a person with a disability, whether or not that individual is actually a person with a disability." N.J.A.C. 13:13-1.3. To sustain a *prima facie* case of disability discrimination under the NJLAD, Plaintiff must show: (1) "he qualified as an individual with a disability, or is perceived as having a disability, as defined by statute"; (2) "he is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without a reasonable accommodation"; (3) "he experienced an adverse employment action," *Lopez v. Lopez*, 997 F. Supp. 2d 256, 272 (D.N.J. 2014); and (4) "the adverse action was taken under circumstances giving rise to an inference of discrimination," *Ewell v. NBA Properties, Inc.*, 94 F. Supp. 3d 612, 620 (D.N.J. 2015).

"Under the NJLAD, the 'perceived disability' doctrine applies when an employer believes the employee has a physical or mental condition that would qualify the person as disabled under the NJLAD if the condition actually existed." *Est. of Fajge v. Dick Greenfield Dodge, Inc.*, No. 11-CV-04527, 2012 WL 2339723, at *12 (D.N.J. June 18, 2012) (internal quotation marks omitted). The statutory definition of "disability" under the NJLAD is exceptionally broad in scope, and includes any "physical . . . disability [or] infirmity . . . which is caused by bodily injury . . . or illness." N.J.S.A. 10:5–5(q); *see also Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 236 (D.N.J. 2015); *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 16 (N.J. 2002). While the term "disability" in the NJLAD is not limited to severe or immutable disabilities, "[n]ot every illness will constitute a disability under the [NJ]LAD." *Guzman v. M. Teixeira International, Inc.*, 476 N.J. Super. 64, 72 (App. Div. 2023). "Although the [NJ]LAD was enacted to eradicate discriminatory employment

8

practices, '[NJ]LAD acknowledges the rights of employers to manage their businesses as they see fit.'" *Klimek v. Sunoco Partners LLC*, No. 11-CV-01988 CCC, 2014 WL 2937926, at *6 (D.N.J. June 27, 2014) (quoting *Viscik*, 173 N.J. at 13).

Under the *McDonnell Douglas* burden-shifting framework, if Plaintiff can establish a prima facie case of discrimination, the burden then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for its decision to terminate Plaintiff. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Defendant meets this burden, the burden then shifts back to Plaintiff to prove that Defendant's stated reason for discharging him is a pretext for unlawful discrimination. *See Henry v. N.J. Dep't of Human Servs.*, 204 N.J. 320, 331 (2010). Plaintiff's pretext burden is "not insignificant," and "requires more than the simple identification of an act or event that [he] believes bespeaks discrimination." *El- Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 173-174 (App. Div. 2005).

## IV. DISCUSSION

### a. Plaintiff's NJLAD Claim – Disability Discrimination

#### i. *Plaintiff Cannot Make Out a Prima Facie Case of Discrimination*

Plaintiff asserts that his COVID-19 diagnosis qualified him as disabled for purposes of NJLAD and that a reasonable juror can find that his discharge gives rise to an inference of discrimination.[8] (Pl.'s Br. 5-7). Defendant argues that Plaintiff cannot satisfy the first element

---

[8] As set forth *infra*, n.4, Plaintiff's claim of disability is solely related to his COVID-19 diagnosis, not his Crohn's diagnosis. When Plaintiff was asked what disability his discrimination claim was based on, Plaintiff responded "COVID," and did not recall any other disabilities or mention Crohn's disease. (Pl. Dep. 103:22-104:10). Even in his brief, Plaintiff argues only that his COVID-19 diagnosis, not his Crohn's diagnosis, qualified him as a member of a protected class. (*See* Pl.'s Br. 5-7).

9

necessary to establish a *prima facie* case of disability discrimination because his COVID-19 did not qualify him as disabled. (Def.'s Br. at 11-18).

In *Guzman*, the Appellate Division of the Superior Court of New Jersey affirmed the trial court's dismissal with prejudice of a complaint alleging disability discrimination based on the plaintiff's argument that "suffering from COVID-19" qualified him as disabled pursuant to the NJLAD. 476 N.J. Super. 64, 72 (App. Div. 2023). There, the plaintiff reported to work feeling "cold, clammy, and weak" and was instructed that he was "not permitted to return to work until he underwent a COVID-19 test." *Id.* at 67-68. The next day, the plaintiff went to a free clinic where he obtained a COVID-19 test, told his supervisor he was feeling better, and offered to return to work. *Id.* at 68. The plaintiff was terminated and filed a complaint against his employer for disability discrimination and perceived disability discrimination, which his employer moved to dismiss. *Id.* The trial court granted the motion, concluding "COVID-19 is a disease but it is not a disability within the definition of the [NJ]LAD." *Id.* The plaintiff appealed, arguing the court erred "in failing to recognize COVID-19 as a disability under the [NJ]LAD." *Id.* at 69. The appellate panel affirmed, observing that "[n]ot every illness will constitute a disability under the [NJ]LAD," and agreeing with the trial court's conclusion that COVID-19 did not render the plaintiff disabled under the NJLAD. *Id.* at 72. Because the plaintiff was able to report to work, was able to go to a free clinic to obtain a COVID-19 test, and did not allege he had gone to a hospital or doctor's office or otherwise sought medical treatment for his illness, and was "feeling well enough" that he "offered to return to work," the panel held that the plaintiff was not qualified as an individual having a disability "as that has been defined by statute." *Id.* at 72-73.

Here, Plaintiff asserts that Defendant cannot rebut his expert's contention that his COVID-19 diagnosis qualified him as disabled.[9] (Pl.'s Br. at 5). Plaintiff's expert opines that Plaintiff's symptoms were severe enough to qualify him as disabled pursuant to NJLAD based in part on his review of Plaintiff's medical history and interview of Plaintiff several years after his bout of COVID-19. (Pl.'s Ex. E-Pl.'s Expert Report, ECF No. 60-3 at 135-39). Yet, Plaintiff's own words contradict his expert's conclusions regarding the severity of his symptoms. For example, Plaintiff's expert states that Plaintiff's symptoms included "fevers," (*id.* at 2), but when Plaintiff was asked how he felt when he had COVID-19, he stated: "I didn't have a fever. I just couldn't go outside for about two weeks [because of the quarantine]. Other than that, that was really it." (Pl. Dep. 100:5-17). Plaintiff's expert also posits that based on his review of Plaintiff's job description, Plaintiff was "unable to perform the essential duties and functions" of his job when he was terminated. (Pl.'s Ex. E, at 2-3). But Plaintiff himself alleges that that he "performed at a level that met Defendant's expectations"—a fact neither party disputes. (Pl.'s Br. 5-6; *see* Def.'s Br.). Plaintiff does not offer any record evidence consistent with his expert's unsupported contention that Plaintiff experienced symptoms so severe that he was unable to perform his job functions. (*See* Pl.'s Br. 5-6; *see* Pl.'s Ex. E, at 2-3).

The undisputed record evidence demonstrates that Plaintiff reported he "felt fine" while he had COVID-19. (Pl. Dep. 76:7-14, 100:13-21, 101:4-10). Like *Guzman*, Plaintiff never sought medical treatment and was not hospitalized due to the virus. (*Id.* 99:19-24, 103:18-21); *see* 476

---

[9] The existence of an expert report does not automatically preclude summary judgment. *See, e.g., McAvoy v. Nissan N. Am., Inc.*, No. CV 15-6824-BRM-DEA, 2018 WL 3159879, at *8 (D.N.J. Jan. 16, 2018). Moreover, "an expert witness is prohibited from rendering a legal opinion." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006); *see* Fed. R. Evid. 702.

11

N.J. at 72-73.[10] Rather, Plaintiff went to a CVS to receive the test. (Pl. Dep. 84:17-19). Plaintiff testified that as soon as he received his positive result he was "waiting to see when [he could] come back to work, and also the amount of time that [he had] to stay out for having COVID." (*Id.* 88:2-10; *see also id.* 105:22-24, 107:19-24). Indeed, Plaintiff's belief that his symptoms were the result of routine allergies that he could work through belies his assertion that the virus rendered him disabled. (*See id.* 82:3-11). Moreover, Plaintiff returned to work at another job after quarantining for two weeks following his positive test result during the same period. (*Id.* 125:15-126:14).

Thus, Plaintiff's own words make clear that his COVID-19 did not render him disabled for purposes of the NJLAD. *See Guzman*, 476 N.J. at 72-73; *see also Riconda v. US Foods, Inc.*, No. CV 19-1111 (KM), 2019 WL 4254389, at *3 (D.N.J. Sept. 9, 2019) (holding plaintiff with stomach virus was not disabled as defined by NJLAD as the symptoms were "nothing more than a transient bout of flu, not meaningfully related to any 'physical disability, infirmity, malformation or disfigurement . . . which is caused by bodily injury, birth defect or illness.'"). As no reasonable juror could conclude that Plaintiff was disabled by the virus, Plaintiff cannot establish the first element of a *prima facie* case of disability discrimination. *See id.*; *see Santini*, 795 F.3d at 416.

Even if Plaintiff could establish a genuine dispute as to whether his COVID-19 rendered him disabled for purposes of NJLAD, his claim fails to satisfy the fourth element of a *prima facie* case because he can point to no evidence supporting his contention that he was terminated under circumstances that give rise to an inference of discrimination. *See Ewell*, 94 F. Supp. 3d at 620. Plaintiff testified that he did not believe his supervisor, Segura, discriminated against him. (Pl. Dep. 109:6-11). When asked who Plaintiff believed discriminated against him, he answered "just

---

[10] In fact, the only symptom Plaintiff alleges lasted more than a short time was his lost sense of taste and smell, which cannot conceivably impact his job duties as a warehouse associate. (*See* Pl. Dep. 101:14-102:15).

12

HR in general." (*Id.* 104:11-20). When Plaintiff was asked what the evidence of his discrimination was, he responded: "Best of my knowledge, the fact that I got terminated with COVID without, in my opinion, proper explanations or, you know, ways about handling the situation." (*Id.* 105:8-15). Although Plaintiff's subjective belief is not dispositive of his discrimination claim, Plaintiff does not set forth any facts giving rise to an inference of discrimination. Crucially, the undisputed record evidence demonstrates that Plaintiff: (1) understood that Defendant's policy prohibited him from coming to work with symptoms associated with COVID-19; (2) acknowledged that he came to work with those symptoms; and (3) has no evidence to suggest he was terminated for any reason other than reporting to work with those symptoms. (*Id.* 108:14-109:2).

Moreover, Plaintiff has not adduced any evidence to remotely suggest he was subject to disparate treatment because of his COVID-19 diagnosis. It is undisputed that Defendant did not terminate any employees who contracted COVID-19 and followed its protocols rather than report to work with symptoms. (SOMF ¶32; *see* Pl.'s Response to SOMF ¶32 (admitting as to Weber Decl.)). Indeed, Plaintiff testified that before he was terminated, he was aware of other associates who contracted COVID-19 and were permitted to return to work thereafter. (*Id.* 105:21-22, 106:2-21). Consistent with Defendant's stated reasons for terminating Plaintiff, it is undisputed that many other employees who, like Plaintiff, contracted COVID-19 and violated Defendant's policies were also terminated. (Pl.'s CSMF, Ex. G, ECF No. 60-3 at 150-173).[11] Thus, Plaintiff has not set forth any record evidence showing there is a genuine issue of material fact for trial which, if resolved in Plaintiff's favor, could satisfy his burden of proving that he was terminated under circumstances that give rise to an inference of discrimination. *See Santini*, 795 F.3d at 416.

---

[11] Plaintiff attempts to distinguish the specific circumstances of the other associates' terminations, (*see* Pl.'s Br. at 6, Pl.'s CSMF ¶¶63-65, 82-85), but offers no record evidence whatsoever to dispute the simple fact that those employees were indeed terminated for reporting to work with COVID-19 symptoms. *See Anderson*, 477 U.S. at 256-57.

13

Accordingly, the undisputed facts demonstrate that Plaintiff cannot satisfy his burden of making out a *prima facie* case of disability discrimination as a matter of law.

### ii. *Plaintiff Cannot Establish Pretext*

While the Court finds that Plaintiff cannot establish a *prima facie* case of discrimination as a matter of law, for the sake of completeness, the Court will address whether Plaintiff can point to sufficient record evidence to establish pretext. To establish pretext, Plaintiff must prove that the stated reason for his termination was both false and motivated by a discriminatory intent, *Viscik*, 173 N.J. at 14, which must be supported with "hard evidence" to survive summary judgment. *El v. SEPTA*, 479 F.3d 232, 237 n.6 (3d Cir. 2007); *see also Webster v. Dollar Gen., Inc.*, 197 F. Supp. 3d 692, 702 (D.N.J. 2016) (finding that to defeat summary judgment "the non-moving party must support each essential element with concrete record evidence.").

Here, Defendant's stated reason for terminating Plaintiff was "disregarding [Defendant's] policy of not coming on site when [Plaintiff was] sick or experiencing any symptoms" related to COVID-19. (SOMF ¶30; *see* Pl.'s Response to SOMF ¶30). Plaintiff asserts that his discharge was pretext for disability discrimination because he "did not knowingly report to work with symptoms according to Defendant's policy." (Pl.'s Br. at 6). However, it is undisputed that Plaintiff admitted to coming to work with nausea, a scratchy throat, and a runny nose—all symptoms of COVID-19 listed on Defendant's posters, (Pl. Dep. 79:1-80:6); that he understood if he had these (COVID-19) symptoms that he was not to report to work, (*id.* 108:14-17); and that he was contemporaneously informed of Defendant's stated reason for his termination, (SOMF ¶30; *see* Pl.'s Response to SOMF ¶30). Plaintiff points to no countervailing evidence to even suggest that Defendant's reason for terminating him was a *post hoc* fabrication. *See Fuentes*, 32 F.3d at 764.

Further, Plaintiff's argument that his allergy and Crohn's disease symptoms overlapped with COVID-19 symptoms and that he only later realized he had the virus are of no moment, as the stated reason for Plaintiff's termination was reporting to work with COVID-19 *symptoms*, regardless of his diagnosis. (Pl.'s Br. at 6). Plaintiff testified that he read the Stop! Poster, which directed employees not to enter the building with any COVID-19 symptoms and expressly listed coughing as one such symptom—a symptom Plaintiff testified he was experiencing when he reported to work. (Pl. Dep. 40:17-41:25, 79:1-80:6; *see* Weber Decl., Ex. F, ECF No. 57-3). Plaintiff also testified that because of his morning standup meetings with Segura, he was aware of the contents of the COVID-19 Policy Poster that Plaintiff saw "plastered" throughout his workplace, which also instructed employees not to report to work when experiencing the symptoms Plaintiff experienced—cough, a runny nose, and nausea. (Pl. Dep. 46:16-47:7; Weber Decl., Ex. F; *see* SOMF ¶¶11-12; *see also* Pl.'s CSMF ¶11). Furthermore, Plaintiff understood if he had those symptoms that he was not supposed to go to work.[12] (Pl. Dep. 108:14-17). Thus, the uncontroverted record evidence shows Plaintiff cannot establish that Defendant's reason for terminating him—disregarding its policy by knowingly reporting to work with COVID-19 symptoms—was false.[13] *See Viscik*, 173 N.J. at 14.

Finally, Plaintiff cannot establish that his discharge was "motivated by a discriminatory intent." *Viscik*, 173 N.J. at 14. As noted above, it is undisputed that Defendant did "not terminate

---

[12] For these reasons, Plaintiff's observation that he did not sign a written acknowledgment that he understood Defendant's policy, (Pl.'s Br. at 6), does not create a genuine dispute of material fact.

[13] Plaintiff also argues that discrimination can be inferred because if he followed Defendant's policy, he would have to miss work for the entirety of allergy season. (Pl.'s Br. at 6). This argument is not only speculative—it is belied by the record evidence. Notably, Plaintiff received EPTO when he took time off for COVID-19 related reasons, understood that this was Defendant's policy, and knew of other employees who followed protocol when experiencing symptoms of the virus and returned to work. These undisputed facts demonstrate that Plaintiff's allergies did not foreclose him from complying with Defendant's policy.

associates that test positive for COVID-19 provided those associates follow its COVID-19 policies." (Weber Decl., ¶10; *see* Pl.'s Response to SOMF ¶32 (admitted as to Weber Decl., ¶10)). Plaintiff testified that he knew that other employees who contracted COVID-19 were provided EPTO and returned to work without being terminated. (Pl. Dep. 105:21-22, 106:2-21). Plaintiff in fact testified that he himself received EPTO for time he previously took off work related to a COVID-19 test. (*Id.* 67:5-25, 70:22-71:5). While it is undisputed that Defendant discharged other employees for violating its COVID-19 policy, Plaintiff offers no evidence that another employee reported to work with COVID-19 symptoms as he did and was *not* terminated. (*See* Pl.'s CSMF, Ex. G, ECF No. 60-3 at 150-173). Thus, the undisputed record evidence shows that Defendant applied its policy consistently and Plaintiff has failed to provide any evidence of discriminatory intent to prove that the stated reasons for his termination were pretext for disability discrimination. *See Viscik*, 173 N.J. at 14; *see Webster*, 197 F. Supp. 3d at 702.

Accordingly, Defendant is entitled to summary judgment as a matter of law with respect to Plaintiff's claim of disability discrimination.

### b. Plaintiff's NJLAD Claim – Discrimination on the Basis of Perceived Disability

Defendant argues that Plaintiff cannot make out a *prima facie* case of discrimination on the basis of a perceived disability pursuant to the NJLAD. (Def.'s Br. at 21-24). Plaintiff does not separately brief his arguments as to his perceived disability claim. Rather, after asserting Plaintiff was disabled under NJLAD, he makes the conclusory assertion that "given the circumstances of this matter, a reasonable jury could find Defendant perceived Plaintiff as disabled." (Pl.'s Br. at 5).

As a claim of perceived disability requires that the "employer believe[] the employee has a physical or mental condition that would qualify the person as disabled under the NJLAD if the

16

condition actually existed," and Plaintiff's COVID-19 diagnosis did not qualify him as disabled, Plaintiff's claim of perceived disability must also fail as a matter of law.[14] *See Est. of Fajge*, 2012 WL 2339723, at *12. Moreover, Plaintiff does not cite to any record evidence to suggest that Defendant believed he was disabled. Plaintiff testified that he never spoke to any representative of Defendant about how he felt when he had COVID-19 and that no one at Defendant ever commented on how sick they thought Plaintiff would get. (Pl. Dep. 103:4-17). Thus, Plaintiff cannot satisfy his burden of establishing the first element of a *prima facie* case of discrimination based on a perceived disability. Furthermore, for the reasons described in Sections IV(a)(i)-(ii), *supra*, Plaintiff is unable to establish the fourth prong of a *prima facie* case or that the stated reason of his termination was pretext for discriminating against him.

Accordingly, Defendant is entitled to summary judgment as a matter of law with respect to Plaintiff's claim of discrimination based on a perceived disability.

## V.   CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 57) will be **GRANTED**. An Order consistent with this Opinion will be entered.

Dated: October 24, 2024

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

---

[14] As noted above, Plaintiff's does not argue that his Crohn's disease constituted a disability pursuant to NJLAD. (*See* Pl.'s Br. 5-7; *see also* ECF No. 1). When Plaintiff was asked in his deposition what disability his discrimination claim was based on, Plaintiff responded "COVID," and did not recall any other disabilities or mention Crohn's disease. (Pl. Dep. 103:22-104:10). Thus, Plaintiff's perception of disability claim is also limited to his claim that he was disabled due to COVID-19.